And we move to the third case this morning, United States v. Neal. Ms. Christensen. Good morning, Your Honors. Good morning. May it please the Court, Counsel. My name is Joanna Christensen and I represent the appellant Tyree Neal in this case. Mr. Neal was a buyer and seller of cocaine, but he did not conspire with anyone to distribute cocaine as charged in this case. I'll address the standard review first. The government spends a considerable amount of time disputing our abuse of discretion standard review, arguing that it should be for plain error. I will concede that Mr. Neal's attorney did not make an objection and did not file a formal motion to withdraw his guilty plea. However, the exchange between the district court and Mr. Neal at the beginning of the sentencing hearing was sufficient to preserve this error. Mr. Neal says, I don't know how I conspired by myself. I'm alone. There's nobody else. I don't know how. This is a conspiracy. And the judge says, you pled guilty. That ship has sailed. Unfortunately, the ship has not sailed because he has the right to file a motion to withdraw his guilty plea for any fair and just reason prior to the imposition of sentence. And he met those goals. So we argue that this standard review is for abuse of discretion. Mr. Neal was charged with the one count of conspiracy. He pled guilty. The factual basis at the change of plea hearing was lacking in that it just essentially laid out a buyer-seller arrangement between Mr. Neal, who received cocaine or purchased cocaine from his suppliers, and sold it to people who then resold it. The only possible indication that this might be a conspiracy was the government's statement that the cocaine was either obtained or provided on fronts. That is the sole information in the record about fronting, which is the only possible argument the government has that this was a conspiracy rather than a buyer-seller agreement. Importantly, in a guilty plea withdrawal situation, we need to determine whether Mr. Neal understood the charges against him. And there are several factors this court has laid out, the first of which is the complexity of the charge. And this court has cases going back years and years discussing about how difficult conspiracy is to understand, even for lawyers, but particularly for laypeople, who may understand it simply as the bad act of selling drugs. But a conspiracy is more than simply selling or buying drugs. It is an agreement to do something further. And there is no such agreement discussed at the change of plea hearing. The language in what he pleaded guilty to says, knowingly and intentionally combine, conspire, and agree with other persons, known and unknown to the grand jury, to anoint a distributed mixture of substances of cocaine. That's not too hard to understand. I would disagree with you, Your Honor. I think the fact that there's an agreement to sell drugs may be easy to understand, but a conspiracy is beyond that. There's got to be something other than the selling and buying of drugs. And there's just not that in this case to support the factual basis. Compounding that is the district court did not further explain what this meant. And in his nature of the charge advisement under Rule 11, simply repeated in a summarized fashion the conspiracy allegation. We get back to the thing that he stated. He understood the charge and so forth. We again have to say, well, no, he really didn't understand it. How often do we make a determination that the defendant in these circumstances did not really mean what he said? Not often. I think there is a case in My Brave United States v. Bard where the court did hold that the defendant did not understand the charges that were explained to him. And from my experience, it may not be often enough. I think that defendants often agree that they understand something that maybe they don't. And this is a rare situation where Mr. Neal did then say, listen, I don't understand this. I don't understand how I'm convicted of conspiracy when it was just me and just me selling. So I think we do look at the entire record, and he says, I didn't understand this. That's the primary reason, fair and just reason he gives for withdrawing his plea. Of course, there are other factors, but mostly we consider whether the evidence was also sufficient to prove a conspiracy. And going through the evidence in this case, the government's never actually said who Mr. Neal conspired with, other than other people. In the factual basis, the government said he was involved in distribution of drugs. And he sold cocaine to confidential sources, none of which is disputed, all of which is a buyer-seller type relationship. Buy money was found in his residence, again, from the confidential source buys. And he admitted buying frequently from someone named BB in Effingham. Now, this is the point of the change of plea hearing, when Mr. Neal did object and say, no, I don't agree to that. He has a conference about four minutes long with his defense attorney. And then comes back and says, OK, I agree, Your Honor. Nothing is ever made of that fronting statement. And were it just that, with no other testimony in the record, we might concede that that's an admission. There is no support for the fronting statement in the record. Several of these individuals testified at sentencing. Several of them said, I bought from him. I bought cocaine from him. Some of them denied statements that they had made that they bought cocaine from him. But nobody testified that that cocaine was done on a fronting basis. Without that evidence to support the government's statement in the change of plea hearing, it just cannot support a guilty plea in this case. What's the support for the proposition that this court, given the guilty plea, should evaluate the veracity and accuracy of the factual proffer that was made at the plea? I think you're asking where my argument is. Well, you're saying there's no support for it whatsoever in the PSR or otherwise, as you, I think, quite clearly lay out in your brief. The question I have is, what obligation is this court under to evaluate the evidence that's in the record, whether it comes from the PSR or otherwise, to kind of test that proffer, if you will, by the government? And where does that obligation come from? I think that what I'm arguing this court should do in this case comes from its review of the district court's findings of a factual basis. The district court has an obligation to find a factual basis prior to accepting a guilty plea. And this court is obligated to review the district court's findings. And those findings, based on case law, can be based on anything in the record. So while focusing on the change of plea hearing statements is important, I realize this court has expanded that focus. So that's where my argument comes from, is that this court's power to review the district court's determination necessarily means, in a case like this, that you have to evaluate the statements and the evidence. And the combination of two facts here are what concern me for Mr. Neal's perspective. That is the fronting statement. You know, oftentimes there was fronting occurring in substance. And then you have a supply relationship that is not isolated, right, that's recurring. And I think that's fair from the plea proffer. And it's recurring in dealer quantities. So given what our court has said on prior occasions, why don't those two facts combine to permit an inference that a conspiracy was present? I think because you do have cases that that's just a buyer. He's buying from a supplier. He's been selling. And that's a straight line, kind of, to visualize it, a straight line between supplier. He's acting as a middleman to individuals that he knows are going to then resell to customers. That's still just a buyer-seller. There's no agreement, particularly between BB, who's the main person we're talking about. There is an allegation that he also received from his cousin. That person's not identified. So there's admission to the BB. So that is simply, there's no indication that there's anything other than regular dealing. And I think this court said at one point, made a comparison to buying a hamburger at McDonald's. You're not making an agreement with McDonald's that every time you buy a hamburger, you're going to buy it at McDonald's. Sometimes you might buy it from Burger King or Wendy's or wherever. You may like your burger that day. Maybe there's not a McDonald's. So I think that it recognizes that even though there are continuous transactions, and perhaps for large amounts, there needs to be something more to show the conspiracy in this case. I see that I'm far into my rebuttal time. Unless the court has further questions, I shall reserve my remaining 40 seconds. Thank you. Thank you, Counsel. Counsel, I'll also give you a full minute. May I please record? My name is Amanda Robertson. I represent the United States. In this case, there was no plain error in judging the defendant guilty of conspiracy to distribute cocaine. And it is the government's position that the proper standard of review is plain error. This is a case where the defendant did not move to withdraw his plea. To raise an issue in the district court, it has to be raised to a degree that it can be resolved. Judge Gilbert didn't treat this as a motion to withdraw a guilty plea. The government didn't withdraw the conversation as a motion to withdraw the guilty plea. But it kind of looks like it, doesn't it? Your Honor, in context, well, I will say, first of all, the defense attorney didn't get with his client and say, Your Honor, can I have a recess? My client has now indicated he wants to withdraw his guilty plea. And looking at this, at this same sentencing hearing, we've already broken once or twice. We show up. This is the fourth time we've showed up for sentencing. Government has its witnesses. And we get to the first thing. Mr. Neal, have you reviewed the addendum to the PSR? And he says no. Defense attorney says, well, I've showed them to him, but he's claiming he didn't see them. So we have the first break. My recollection is there's a second break. And then we get to the, are there any other objections besides relevant conduct, acceptance, use of violence, reckless endangerment, obstructing. And that's when he says, Judge, I don't understand how it could be a conspiracy. I don't have co-defendants. At that point, he doesn't, the defense attorney doesn't say, Judge, it's my understanding he wants to withdraw his guilty plea. And I will tell the court that the first time I became aware that there was a claim that the defendant moved to withdraw his guilty, or his claim that he moved to withdraw his guilty plea is when I got the brief in this case. The first time Judge Gilbert's going to become aware of the fact that Mr. Neal is claiming that he moved to withdraw his guilty plea is going to be when he gets this court's opinion. This was not a meaningful motion to withdraw his guilty plea. If anything, it certainly appeared that Judge Gilbert believed this was a delay tactic, a part of the continued game by this defendant to prolong this and not get to sentencing. There was 13 months between the change of plea and sentencing. We'd already had a hearing on the career offenders. What were these delays, what were the separate hearings involving? Why did Judge Gilbert grant those? The separate hearings? Are you talking about the career offender issue? Well, whatever it was, they extended it. The defendant had counsel of choice who represented him at the change of plea. She filed multiple objections. We responded. The government showed up with its witnesses on the day of sentencing. There was irreconcilable differences between the defense counsel and defendant, so we didn't go to sentencing. The defendant got another attorney. When the government showed up again for sentencing with witnesses, his mother indicated she was going to hire new counsel, so the judge gave a tie to hire new counsel. There were multiple delays, and there was, I believe, 13 months between the change of plea and the sentencing in this case. We believe also the fact that a defendant admits something at sentencing or at plea under oath, there cannot be an additional burden to prove those facts that the defendant has pled to under oath. If a defendant admits to a factual basis under oath, and then the government is still tasked with the burden of putting evidence into the record on facts that have been admitted under oath, sentencing would be unmanageable. I don't know how there could ever be awarding of an acceptance of responsibility. This court has repeatedly found that what a defendant's admissions under oath are presumed truthful. If we look at those admissions, though, Ms. Robertson, I mean, they are really thin on the conspiracy point. It may come down to one sentence, and that sentence is, you know, quote, the evidence would be that oftentimes the cocaine was either obtained or provided on fronts. Are you confident that's enough? I'm confident that's enough based on the law of this circuit. When coupled with prolonged, regular, extensive dealing, this court has found that distribution of large quantities of drugs with regular standardized dealing over an extended period coupled with sales on credit is sufficient to establish conspiracy. But we've also said that occasional sales on credit are not enough, that they may just indicate a typical buyer-seller relationship. And the evidence, respectfully, in this case, Your Honors, that the defendant admitted under oath that oftentimes the drugs were obtained or provided on fronts. And I would indicate that, respectfully, in the appellate's brief, they indicate that Jared Jones said they were never provided on a front, and that's not the evidence in this case. That's the statement that he, I believe, at page 5 of the reply brief, they say Jared Jones indicated he purchased from Mr. Neal between one to seven times a week and purchased amounts ranging from half ounce up to four ounces always in cash at the time of sale. That's like saying he said there were never fronts, there was never credit. But if you look at that statement, which is in the record at 69-6, What is that, the PSR? Pardon me? What are you referring to, the PSR? No, it's in a statement of Jared Jones that's attached to a government pleading. The record site would be 69-6. Jones says this is what I pay for the various amounts. He never says I don't get fronts. He never says, as indicated, that I pay always at the time of sale. It doesn't say that. Now, it comes back to What is the evidence of fronting, though? Your Honor, in addition to the defendant's admission Beyond that, though. There's not evidence in this case of fronting. And again, we come back to the defendant admitted it. Because the defendant admitted to it, there was no reason or no notice for the government to put additional evidence in. The defendant pled guilty to conspiracy. And one of the things he admitted is that oftentimes the drugs were obtained and provided on fronts. He said that under oath. It cannot be that then the government has to go and put on additional evidence to something he's not contested at sentencing. At sentencing, he was contesting relevant conduct and a myriad of other things. He wasn't contesting that. If he had contested that, if he had raised that in the district court, we would have put on evidence of that. He didn't raise it. He didn't. And again, Your Honor, as indicated in our brief, even without the fronting, the government believes that the evidence in this case is sufficient to support conspiracy. There is evidence that the defendant had others working with him in the distribution. He indicated he had on these one to two week trips to Effingham, he had a driver. We know that he had a driver taken to the deliveries of drugs. One time, he put his associate in a car with the CS just to make sure that everything was okay after the deal to escort the CS. We know that there were repeated acts of evidence in this record where the defendant and others were acting in concert to protect the defendant's drug business. That's being a CS was beaten by two of the defendant's associates, and when the CS was beaten, they were saying, this is because you snitched on Bubby. You're a dead man. We know that the defendant sought to, with Jared Jones, hey, do you know someone who wants to make $20,000? I need a snitch killed or I'm going to have to do four years. That's mutual trust that this court talks about in conspiracies. This court has found that protecting acts to protect a defendant's drug business are acts of a conspiracy. Are these facts in the record, the driver taking him to deliveries, associates beating a CS? Yes, Your Honor. And where?  Much of it would be in the PSR, but specifically about Travis Marshall driving the defendant to the first two control buys where the CS is Kendrick, and then after the buy the defendant calling a cab, putting his associate Marshall and Kendrick in the cab to drive them away. That was testified to as sentencing. We think that the evidence is sufficient under any standard to sustain the conspiracy beyond the conspiracy to distribute cocaine, and we request this court to affirm the judgment of the district court. Thank you. Thank you, Counsel. Ms. Christensen. Thank you, Your Honors. I think I'll address probably what Judge Scudder asked about where I'm getting this standard that we can look through the evidence. The government proved it for me. The government's looking through the evidence, not relying simply on what was admitted at the change of plea hearing or what was stated at the change of plea hearing, because all of this, the drivers, the assaults, the alleged large transactions with people other than BB, none of that is at the change of plea hearing. So if the government can use those facts to prove up the factual basis, then we can say, but there's no evidence of fronting. Those facts specifically. Which they seem to acknowledge, at least in the record, that there's no evidence of fronting. They seem to agree with you on that. Well, they certainly don't put anything or point to anything else that would show fronting. I'm not exactly sure. The statement about transactions always being in cash, that's taken directly from that exhibit. And if they're always in cash at the time of sale, that's actually the exact opposite of fronting. So saying that, and I believe it was in my brief on page five, if I remember correctly, that's exactly what it says. So we relied on it. That's the government's evidence. The driver's not sufficient to show a conspiracy. There's no indication that they knew what was going on, aside from that they were driving Mr. Neal places. And the assaults show perhaps a conspiracy to assault other people. The connection to a drug conspiracy is fairly thin, because those people were not shown to be directly involved. At least one of them was not shown to be directly involved in the drug conspiracy. So it's a conspiracy perhaps to show something else, but as far as the drug conspiracy, it falls flat. So unless the court has further questions, I will ask the court to reverse and remand. Thank you, Ms. Christian. Thank you. Thanks to both counsel, and the case is taken under advisement.